1625.72 Mr. Davis. Good morning your honor. May it please the court. My name is Lee Davis. I'm here from Houston, Texas today on behalf of the appellant Mark Chaffin. And today I'd like to cover the two main issues in this case. And the first isn't really the only main issue your claim the claim construction question. That's that is really what I get what what we get down to. If we disagree with you on claim construction you lose on infringement on infringement. That's correct your honor. We do not believe even if we lose on claim construction and on summary judgment that this was an exceptional case. But you're right if the claim construction of the district court's implicit claim construction is correct then the summary judgment was correct. So I'll cover the the claim construction which compelled the district court summary judgment order of non-infringement and then I'd like to cover the district court's abuse of discretion in awarding fees in this case. The key disputed term here is continuously draw which is in all three of the asserted independent claims. You say that is that means to move by suction. We believe we submit that that means to move by suction. Okay so when the Bible refers to hewers of wood and drawers of water those people are not just dropping a bucket into the well and pulling it up. I suppose that they're dropping a bucket into the well and moving that water towards them as they draw it from the well. Right that's not by section it's by drawing water. I'm sorry. That's not by section it's by drawing water. They're drawing it up. Well it's it's it's moving towards themselves but it's by force and so in that case the force would be them pulling it up with their arms. I mean the word draw is a verb that means to move by force. In our case the force is suction that's created in the venturi. So it could be lots of things in other words. It could be lots it could be many different forces but in any case the force is acting on towards towards the drawer so to speak. In the district courts they're talking about having you say moving by suction well what are you moving? It's chlorine. That's correct. And so it seemed to me the district court was saying the chlorine has to be pure chlorine. If it's chlorine in a mixture with gas for example then it wouldn't it would do it would not be continuous. That's correct the district court in its summary judgment order seems to raise this implicit construction or interpretation that that term has that that term means a continuous stream or a continuous flow of fluid an unbroken flow of fluid. Unbroken flow of chlorine. Of chlorine correct. And that's simply not supported by the intrinsic evidence or required by by the patent itself. And so our proposed construction continuously move by suction is supported fully by the intrinsic record. As you read the claims. But you just agreed with me that that the plain and ordinary meaning of continuously draw is not necessarily continuously moved by such. It's by force. By force and in this case the force is the suction that's created in the venturi. Could be something else. Yes. It could be something else in another system but not in this system because this system uses sewage as it's recirculated by the pump when the pump is running in this in this septic tank in the storage mixing tank as the pump is running it's recirculating the sewage through this recirculation pipe. There's a venturi in that recirculation pipe. The venturi has a supply line that goes down to this chlorine supply canister. So as you're creating vacuum in this venturi you're drawing suction up from the chlorine supply canister. And so the force in this case in this system is a suction. It's a vacuum that's created in the venturi. If the chlorine canister was entirely full of chlorine like to the lid then when you're drawing out with a venturi effect you're going to be drawing something pretty close to pure chlorine. Aren't you? And then as the as the volume in the canister declines and gas air includes air aren't you of necessity going to be drawing some gas along with the chlorine? You are. And as a result of the venturi effect. That's right. As you get as you get lower and lower as you get more and more gas. That's exactly right. And our position is that's okay. As long as that pump is running and you have a suction that's being created in the system you're going to be able you're going to be drawing chlorine out. Now when the canister is empty obviously you're not drawing any more chlorine but at that point it's empty you got to refill it. But so long as there's chlorine that that suction has access to and that it can reach you are continuously drawing chlorine whether it's a full stream of chlorine or whether it's chlorine mixed with air as you get closer to the bottom of the of the storage supplies canister. So when Mr. Lin was asked about whether there was a break wasn't it Mr. Lin he was saying well you didn't think it was possible while the machine is working because you're always going to be drawing some chlorine in the gas until it's empty. Well that's right and I and that that was a specific that was a specific hypothetical posed in his deposition. Mr. Lin if there were an identifiable break would there be infringement and I believe he said well what's an identifiable break and the example given was I don't know how physically I don't know how physically this could occur and that was in response to well let's say that for a minute it draws chlorine and then for the next minute an entire next minute it just draws air and then it starts drawing chlorine again and he said well I don't even know how physically that could occur other than maybe I think as we said in the brief other than maybe shutting it off with a check valve which is in the prior art. I don't even know how that could occur but yeah if you had an identifiable break of a full minute long you probably wouldn't have any infringement here. As you look at the videos that we submitted with the appendix and the other evidence you can see that there is never a full minute that chlorine is not being drawn. It's always being drawn so long as there is chlorine in the supply canister. And in both iterations of the ACQUIUS devices am I correct in understanding that there is initial draw of what you would call considerable amount of chlorine because that's what's pulling off the top and then when you emptied out part of the canister then you start getting the mixture of chlorine and air? That's right. I'd call it an initial dose I think is what we refer to it as and that's just the way that the two ACQUIUS devices are constructed. They have an initial dosage canister and then they have a supply tank that replenishes that dosage canister. Initially in the first 20 seconds or so the dosage canister is exhausted and then it's replenished from the supply canister as long as the pump is running. And it's sucking through a pinhole. Basically a pinhole. I think it's about 30 thousandths of an inch. That's right. So necessarily you're going to be getting droplets if you will of chlorine coming through. That's right. And as you watch the videos you see there are different sized droplets moving along the chlorine supply tube. So we would submit that the correct construction is continuously moved by suction that's fully supported by the intrinsic record. The district courts implicit claim construction, what we read it as an implicit claim construction in the summary judgment order just simply is not supported and contradicts the intrinsic record. I'd just like to move on briefly in my time before I get into my rebuttal time. Obviously the summary judgment hinges on the correct construction but I'd like to turn to the exceptional fee award finding and I'd just like to point out that when you read the record, when you read the briefs and look at the record that's in front of this court, what we have here which is what I just discussed, we have a good faith claim construction that's fully rooted in the intrinsic record, number one. We have well supported summary judgment evidence that we submitted that directly supports infringement if that claim is construed the way we say it should be. And that's on the objective reasonableness prong of exceptional case finding. On the litigation conduct, and this is where it's really troubling we think, you have a sharply worded, very aggressive, we'll concede, very aggressive pre-suit demand letter. The only thing you forgot to ask for was the jewelry that belonged to the wife of the other guy. I'm not sure, right, but the accused infringer was free to ignore that or if he disagreed with us to reject it, which he did. But when you look at the course of conduct throughout this litigation, you have absolutely no evidence of misconduct. When you look at- Other than the weakness, the perceived weakness of your case on the merits from Judge Atlas's point of view. And then second, the aggressive letter. And then I think she referenced the fact that you had brought a bunch of claims that you dismissed. And that's true. And I would like to address that just briefly. The other claims that we brought were related. They were pled on information and belief, a good faith basis. Those were, number one, dropped after discovery was closed. And number two, I think it's important to note that Appleese expressly stated in their on these cause of action, on these other three cause of action. I mean, that's a tacit admission. I would think that they didn't waste much time, spend much time or effort fooling with these claims. And once we realized that there wasn't evidence to support them, we dropped them. The cases that you look at, we surveyed as many post-octane fitness cases as we could in looking at them. Can I ask a question on this? This is one that I was asked to my clerks about, and I don't know the answer to it. Here we have a respected U.S. and United States District Court judge sort of saying, in my court, I find that this is an exceptional case. This is beyond the pale. So what is our standard of review? Are we trying to decide what the conduct standards are in this particular district court in Texas? Are we applying a nationwide standard? Well, I think it should be a nationwide standard. And I think this is a good opportunity to decide some uniformity among all patent cases and how they're determined. I don't think that an exceptional case should be that if a certain court doesn't handle as many patent cases on a day-to-day basis. But what happens if a district court, say, for example, has some specific rules for trying patent cases that are unique to this particular district? And the district court judge's upset is the fact that the person that they've taxed with the exceptional case violated all those rules. That would be unique to that particular case. So there are circumstances, Arthur, that would be unique to a particular court in a particular case as opposed to generalized, quote, misconduct. I think that's a good point, Your Honor. I think that if there are specific local rules that a court has adopted and a litigant goes in there and violates those specific rules, then yes, if that were the case, then sure, they may find the exceptional case in that district versus a different district. In this case, there aren't certain local rules that were violated. No, but the judge was probably sort of offended by your non-negotiable letter that demanded, as Judge Clevenger says, everything except the family jewels, including inventory, list, patent rights, tenure non-compete. And your response to that is, the law does not forbid driving hard bargains. I think I'm going to have that quote put up on my wall. The law, however, does allow a district court to look at unreasonable conduct. Sure. And at some point, you know, hard bargains become unreasonable. Sure. They absolutely do. And my response to that is just that as many cases as we could, we surveyed post-octane fitness. And when you look at cases where fees were awarded in exceptional conduct, you see inequitable conduct findings, you see true unprofessionalism, harassment, actual misleading statements made to the court, history of bringing nuisance value lawsuits, none of that, none of that occurred in this case. As we lay out in the briefing and in the record, the discovery was equal on both sides. There were no motions to compel. There was no fighting at the court about not producing things. You know, one thing to point out is that the district court did seem to focus on, well, we refused to produce the testing results. After we sent a very detailed demand letter to the other side, they said, well, give us more of your testing results. And the pre-suit response was, well, no. Well, all of that was produced in the normal course of discovery once litigation was commenced. So nobody withheld anything. Nothing was hidden. There were no delay tactics, no motions to compel anything from either side. Once litigation started, it was as run-of-the-mill a case as I think that you will find. I see I have about a minute and a half, and I'm well into my rebuttal, so I'll sit down and address any further questions. Okay. Thank you. Mr. Paul. Thank you. I think the key issue that we need to think about, at least when it comes to the claim construction issue, is that they had an opportunity to propose claim construction during multiple phases of the litigation. When the court asked for the disputed claim terms, all up through summary judgment, if they had prosecution arguments that would have affected the meaning of the claim terms at issue here, that was the time to present them. Instead, Mr. Chaffin consistently argued that the terms should be given their plain and necessary meaning to the court without ever proposing a construction and without ever referencing the intrinsic record. Neither side asked for it. Neither side asked for it. That is one distinction. The judge is flying blind a little bit into the summary judgment. A little bit, but the cases that they rely on in their briefs to support the proposition that they should have had an opportunity in the motion for reconsideration, all of those cases there was an actual dispute at some point during the lawsuit. That's not the case here. It's not like a situation where they would be presenting a brand new claim construction on appeal or you could claim you were blindsided. Their view of the claim construction was known to your side at least by the time after the summary judgment comes out. Their side of the claim construction, the first that we knew of their proposed claim construction was the motion for reconsideration. There was a motion for reconsideration and the judge tweaked her claim construction a motion for reconsideration which suggested to me that she had heard the arguments on both sides. Okay. I did not perceive her order on the motion for reconsideration as tweaking claim construction, but maybe I misread that. Mr. Chaffin's reply brief contends that Mr. Braden concedes that instantaneous flow rates within the accused devices never reach zero. He does this a couple of times. He's relying on concessions, alleged concessions that we supposedly have made in our response brief by pointing to certain charts that Mr. Wysoon has cited to. The videos that I saw showed that the chlorine, as best I could see, the chlorine was always flowing in the tube in conjunction with gas, with air. That is correct. There's actually a dispute between the experts on both sides as to whether there's ever a time when there's no chlorine present at all. I don't think that's the dispute, Judge. I think that- Well, I understand that, but as to whether that's true, I can show it to you. One side says, well, there's a time when there's never any chlorine and the other side says, well, there's never such a time. Well, the distinction is where you're looking because their position is that it doesn't matter where within the accused devices that the chlorine is. Your view would be that if there's chlorine in the tube separated by air, then that's the air is a time when there's never any chlorine. I don't care what happens in the tube. I only care what happens either going into the Venturi device or coming from the supply canister. Your claim construction would require a pure flow of chlorine, to continuously draw chlorine would be all chlorine, never mixed with air. Going into the Venturi chamber and coming from the supply chamber, my construction would be that that has to be continuous, as the claims say. I think- Even though you know you're using a Venturi effect and you know that you're always going to get gas as you deplete the volume of the chlorine in the canister? When you're reading the claims on their face, I don't think that matters. I mean, they have interjected this idea that the judge has given some sort of an implicit construction that requires an uninterrupted stream, and I disagree with that. Now, we can think further and go, it is only logical that if there is an uninterrupted stream or a continuous stream of chlorine flow into the Venturi chamber or from the supply canister, then yes, we might assume that there is a system or most systems, there's going to be a continuous stream, uninterrupted stream of chlorine within the supply tube between those two points. But I'm not prepared to say that's always the case, and that's not what the claims are directing. But that's not an assumption, is it? That specification contemplates that? It is not an assumption that specification contemplates. And I think the other issue here is that Mr. Davis has stated that the prosecution history is completely consistent with their proposed construction, but inconsistent with the judge's claims. I don't think that's the case at all. I don't think there's anything inconsistent about what the judge did with the prosecution history. Because if you go back and look at the prosecution history, the argument that they were making to the patent office was simply reciting that the 071 patent does not include the claim language, and they recited the claim language verbatim. They did not assign any sort of a special meaning in the course of prosecution history to this particular claim language. There's nothing that really causes us to look beyond the face of the claims itself. They did not define the claim language a certain way in the specification. And again, I just don't think it's inconsistent with what the judge's order is in this case. I would like to make a couple of points. Is there, down in Texas, a sort of a graduated list, a graduated variety of threat letters going from the most polite, gee whiz, and possibly you might have, but we're good friends and we meet at church. And please look into it all the way to this one. No. I'm not aware of anything like that. How would we know whether or not this letter stands out, cries out, as being really the worst ever? Well, I don't think that it's the letter itself that's necessarily the issue. And as you noted, I mean, there's nothing in the law that prevents them from making strong demands and sharp, sharp letters. Under the 285. You think her order rests almost entirely then on the judge's view of the skinniness of their legal position? I think, well, the judge did say she found that the legal position to be by itself objectively unreasonable. And then she also stated separately, we find the manner in which they litigated the case to be objectively unreasonable. So I think she looked at both issues and concluded the same thing for both issues. In my opinion, I've always viewed it as- But agreed with her on the claim construction issue, then we would necessarily affirm the award? If you disagreed with her on the conduct, I think that the objective unreasonableness of the position is enough to support fees by itself. I do not think that if you disagree on the claim construction issue, that the conduct in and of itself is necessarily enough to support 285 fees. Because of course, their case would be stronger than we've perceived it up until this point. Talk about what a- Very refreshing to have candor from counsel. Thank you. Well, we do that in Texas. Why, shoot. Down in Texas. I didn't wear my boots, Judge. So talk about the other, any other conduct other than sending the letter because you were implying that. Well, I'm implying what? You were implying when you said strong letters are not forbidden. Sure. The issue is how do we determine, does the judge have the right to make an inference in terms of the motivation of the other party based on circumstantial evidence? And this court has said that they can't. In this case, I think when you consider, and it's not just the strength of the letter, the words of the letter that I have issue with or that we have issue with, it's that we're not limiting the scope of our sharply worded demand letter just to the facts of this case. Right? It's not just about infringement or the accused of ISIS. It's about an unrelated patent. It's about a covenant. Yeah. It's about we want to figure out a business. Right. Exactly. Exactly. And I think that that supports the judge's inference that the motivation, it's the motivation that's the issue. All right. So the contents of the letter do bother you. It's just the tone that doesn't. No. No. I mean, if they wrote the same demands in a very nice way, I'd still have a problem with it. I just think that the tone is particularly, the tone was indicative of the motivation behind Mr. Jaffin. It has to be the tone, doesn't it? Because that's what patent litigation does. You seek an injunction, you put them out of business. Is that any different? So it has to be the tone. This doesn't? That's not necessarily the way that I approach my cases, Judge. I mean, I think that if I have an illegitimate dispute with a potential infringer, the first thing I'm going to do is try to get together with them and work out what the issues are. Is there a legitimate? Well, that depends on the competitive situation. Well, sure. Sure. So here, the competitive situation on its face is clear. We'll put the competitor out of business. I have a patent. The statute gives me the right to exclude infringers. So doesn't it have to be the tone of the letter that affected the judge? I don't, I certainly think it affected the judge, the tone. But I don't think that that's the only thing that affected the judge. I think you're saying it's a combination of a weak cause of action with a demand that you plow salt into your fields. That is a true statement, Judge. But then there are firms that operate on a take-no-prisoners basis, and then there are those that don't, right? And they are free to do so. But under the revised octane fitness... This is not up to the firm, really. I want to intrude on Judge Clevenger's question. It's the commercial relationship on which the finality, the rigor of the demand is made. Sure, but there's... If you're looking for licensees, then you look for licensees. If you're in a competitive situation where your business is really hurting, you look for what the patent grant gives you the right to achieve with a valid patent. Sure, and we're not saying that there's anything wrong with that. But under the revised octane fitness decision from the Supreme Court, you're going into that recognizing that if you're taking that position or if your motivation looked out in that light, combined with an objectively unreasonable patent infringement claim, you are risking an award of fees under Section 25. I didn't want to interrupt your... No, no, no. My only point was, we see it in the way cases are argued here. Some law firms or lawyers are more aggressive than others. That's all. Sure. That's why sometimes they're just more demanding. Right. What's your answer to my concern about what standard we're using here? Are we supposed to be reading these letters purely as a subjective matter in this particular court for this particular judge? Are we trying to decide whether, from our experience with all kinds of letters, whether this letter crosses a line somewhere as a matter of a national standard? I don't think it's a national standard issue. I think it's this judge. It's an abuse of discretion standard. It's the judge's discretion that should be reviewed. But she's making a factual determination that this letter is out of line. And she has the right to do that. Out of line. But without telling us what any of the parameters are. Without telling us what, in particular, it was about the letter that set it apart. Because the whole test is, have you set yourself so far apart from a norm that you deserve to be taxed? And so what I had trouble with, with her opinion, was I didn't know what her baseline was. I didn't know why this letter was offensive compared to other letters she's seen from patent attorneys down in her district. I understand your concern and I agree that it's not articulated in the order. Does the district judge have to give me that baseline so I can know that there isn't clear error in the factual assessment that this letter is out of line? Well, it seems to me that if you're requiring the district judge to give you the baseline, you're effectively cutting away at her discretion to begin with. So we're moving from an abusive discretion standard to something a little bit more, something articulated by this court or high-level court. And I'm not saying that there's anything wrong with that. I'm just saying I don't see that. But you do abuse your discretion if you make clearly erroneous fact findings upon which your discretion is exercised, right? Correct. So the only way we can ever decide whether something is or is not clearly erroneous is to have a baseline in your mind for what the truth is. I understand the concern. That's an intractable problem in a way with our trying to decide. We can't really get inside the mind of the district judge. But that's what the abusive discretion standard asks us to do. Any other questions? Any more questions? Thank you. Okay. Thank you. Thank you, Mr. Paul. Okay, Mr. Davis. Thanks. I have very little time left, so I'll try to cover this as much as I can. The first part, I think there was a question about objective reasonableness. And I think one thing that's important to note is that if this court agrees with us on the proper claim construction and turns the summary judgment around, this court does not even have to reach the fee question because then all of a sudden there's no prevailing party. The second is the waiver issue that my colleague raised, and I think that the O2 micro case is appropriate in this instance. Both parties advanced a plain and ordinary meaning, but at some point a dispute arose as to the scope of what that claim term means. And O2 micro says that sometimes a plain and ordinary meaning or no construction at all is going to be inadequate when it doesn't resolve the party's dispute, and that's clearly what we have here. We have an argument about what the scope of the term continuously draw is, and this term needs to be construed. Now, the cases that are cited in Appley's brief, one relates to a new infringement theory that was raised on a motion to reconsider after summary judgment. Others relate to a new claim construction raised after a jury trial. This court has stated, the Conoco case cited in our brief talks about rolling claim constructions, whereas the district court understands the technology better. You can go back and revisit what a claim term means. I see I'm out of time at this point, so if there are no further questions. Let me see if there are any more questions. Do you need a last word? The only thing I would say, Your Honor, is that Octane Fitness clearly says that fee is not a penalty for not winning, and the Newegg case, that case says we can actually even be ultimately wrong but still objectively reasonable. Thank you for your time today. Thank you. Thank you both. The case is taken under submission. All rise.